1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA**

9

| | |
|---|---|
| **SUSAN ZAWACKY**, individually, and as Personal Representative of the Estate of **JENOAH DONALD**, deceased; **ALEXZANDRA GASAWAY**, individually, and as guardian of minor child **I.D.; TIFFANY WALLAWAY**, individually, and as guardian of minor child **S.W.**; **KARLIE KOACH**, individually, and as guardian of minor child **C.K.**; | NO. |
| | **COMPLAINT** |
| | **JURY DEMANDED** |
| Plaintiffs, | |
| v. | |
| **COUNTY OF CLARK**, a political subdivision of the State of Washington; **SHERIFF CHUCK ATKINS**; Sheriff's Deputy **SEAN BOYLE**; Sheriff's Deputy **HOLLY TROUPE**; and **JOHN and JANE DOES 1-10**, in their official and personal capacities, | |
| Defendants. | |

10
11
12
13
14
15
16
17
18
19
20
21
22
23

24    COMES NOW the above-named Plaintiffs, by and through attorney Mark
25  Lindquist of Herrmann Law Group, by way of claim, allege upon personal knowledge as
26  to themselves and their own actions and upon information and belief upon all other
27  matters, as follows:
28  //

PLAINTIFF'S COMPLAINT - 1

**I. INTRODUCTION**

1.     Jenoah Donald was pulled over in an unlawful "pretextual" traffic stop by Clark County Sheriff's Deputy Sean Boyle. Sheriff's Deputy Holly Troupe arrived to assist. A new officer on a new assignment, she mistakenly thought she saw a weapon in Mr. Donald's cluttered car.

2.     Deputy Boyle ordered Mr. Donald out of the car. When Mr. Donald did not immediately comply, the deputy quickly escalated the situation by attempting to physically drag Mr. Donald out. Deputy Troupe grabbed Mr. Donald's jaw. Unarmed, Mr. Donald passively resisted.

3.     Failing to physically remove Mr. Donald from the car, Deputy Boyle, without provocation, further escalated the situation by punching Mr. Donald in the nose. This did not coax Mr. Donald out of the car.

4.     Instead of stepping back and considering de-escalation and other options, Deputy Boyle again tried to physically drag Mr. Donald out of the car. During the struggle, the gear shift on the center console was bumped into gear. The car rolled forward.

5.     Deputy Boyle, with his feet planted outside the car, drew his service weapon and shot at Mr. Donald. The first bullet hit the outside of the pillar between the front and back seats. After missing, Deputy Boyle shot a second time and the bullet hit Mr. Donald in the head. He died a week later.

6.     About three months prior to this shooting, Clark County Sheriff's Deputies shot and killed Kevin Peterson Jr. as he was running away from them after trying to sell Xanax to an informant.

7.     On or about January 29, 2022, one of the deputies who shot at Kevin Peterson shot and killed an off-duty Vancouver Police Officer, apparently mistaking him for a criminal suspect.

8.     Clark County has a policy, custom, and established practice of failing to supervise and train its officers to use deadly force only as a last resort.

*HERRMANN LAW GROUP*
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

## II. PARTIES

9.     Defendant CLARK COUNTY is a political subdivision of the State of Washington. Defendant has various departments, including but not limited to the Sheriff's Department "CCSD," which is responsible for providing law enforcement services within the County of Clark. CCSD's mission is to "protect and safeguard our community."

10.     Defendant SHERIFF CHUCK ATKINS, was the elected Sheriff of the CCSD, who, at all times relevant hereto, was acting under color of law. In this role, he made supervisory decisions as they relate to Defendant deputies, including discipline, assignment, and training. The Sheriff's acts and omissions were, at all times alleged, affirmatively linked to the behavior of Defendant deputies in the sense that he encouraged, condoned, and/or acquiesced in their acts, omissions, customs and established practices.

11.     Defendant SEAN BOYLE is a Clark County Sheriff's Deputy who, at all times relevant hereto, was acting within the scope of his employment, and under color of law.

12.     Defendant HOLLY TROUPE is a Clark County Sheriff's Deputy who, at all times relevant hereto, was acting within the scope of her employment, and under color of law.

13.     Defendants JOHN DOES 1-10 (hereinafter "Defendants Doe") are employees and/or agents of the Clark County Sheriff's Department.  Each Defendant Doe was within the scope of his or her employment at all relevant times.  Defendants Doe knew and were deliberately indifferent and were negligent; acted in furtherance of an official and/or *de facto* policy or procedure of deliberate indifference and negligence; and/or were responsible for the promulgation of the policies and procedures and permitted the customs and practices pursuant to which the acts alleged herein were committed.  Their identities are unknown at this time and will be named as discovery progresses.

PLAINTIFF'S COMPLAINT - 3

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

14.     Plaintiff SUE ZAWACKY is the decedent's mother. She brings claims individually and as the Personal Representative of the Estate of JENOAH DONALD, the deceased. Plaintiffs Alexzaandra Gasaway, Tiffany Wallaway, and Karlie Koach are guardians of minor children of the deceased, I.D., S.W. and C.K., respectively, and bring claims individually and as guardians of said minor children. Plaintiffs bring all claims available to the Estate of JENOAH DONALD and all beneficiaries under federal and state law.

## III.     JURISDICTION AND VENUE

15.     This action arises under Washington State's wrongful death law and the Constitution and laws of the United States, including 42 U.S.C. § 1983. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

16.     Venue is proper in the Western District of Washington pursuant to 28 U.S.C.§ 1391(b)(1) and (b)(2).  Clark County is located in this District, and the events and omissions giving rise to the claims in this action occurred in this District.

17.     An RCW 4.96.020 Tort Claim was properly and timely filed with Clark County on or about June 24, 2020.  Over sixty calendar days have elapsed since the claim was presented to the City. All substantive and procedural requirements of RCW 4.96.020 have been met.

## IV.     FACTS

### A.  WRONGFUL DEATH OF JENOAH DONALD

18.     Jenoah Donald was 30-years-old when he was shot a killed by Clark County Sheriff's Deputy Sean Boyle. He is survived by his mother, brother, and three children. He had a white mother and black father and his physical appearance was African American.

19.     He struggled with dyslexia and ADHD. On the autism spectrum, he was prone to withdrawal, especially when under stress. During his sophomore year of high

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

school, his mother began home schooling him. He failed the GED test and his mother remembers him crying in frustration.

20.    While schoolwork was difficult, he did have a talent for mechanical tinkering. He liked to work with engines. For example, he would remove small engines from lawnmowers and install them on bicycles or scooters.

21.    As an adult,  Many officers in local law enforcement knew him. His family reports he had a positive relationship with local officers. At least one local officer served as a mentor to Jenoah as he tried to put his life on the right track.

22.    Mr. Donald continued to tinker with engines as an adult. He would buy clunker cars to fix them, restore them, and sell them. In January and February of 2020, he was working on an older Mercedes Benz sedan.

23.    In the last week of January, 2020, Mr. Donald was stopped by a Clark County Sheriff's Deputy, apparently because he did not have a license or Trip Permit for the Mercedes, which was a work in progress. The deputy wrote him a citation for Driving With Suspended License, advised him to get a Trip Permit, and sent him on his way.

24.    On or about February 4, 2020, Mr. Donald was driving this same Mercedes in the neighborhood of Hazel Dell, an unincorporated portion of Clark County. He now had a Trip Permit.

25.    At about 7:40 pm Clark County Sheriff's Deputy Sean Boyle, a K-9 officer, heard radio traffic about "suspicious activity" near a known "drug house."  Deputy Boyle had over 20 years of experience in law enforcement.

26.    Deputy Boyle "self-dispatched" in the direction of the drug house. He stopped short of the location to wait for backup units so they could all arrive on scene at approximately the same time.

27.    While waiting, he noticed an older Mercedes that may have been "similar" to cars described in the call about drug house activity. He left his position and pulled in behind the vehicle. After deciding to pursue the vehicle for suspicion of drug activity, he

PLAINTIFF'S COMPLAINT - 5

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

noticed the car's right brake light was out. Deputy Boyle initiated what's commonly known as a "pretextual" traffic stop.

28. Pretextual traffic stops are expressly prohibited in Washington under *State v. Ladson,* 138 Wash. 2d 343 (1999). An officer who lacks probable cause to pull over a citizen for suspicion of drug use cannot lawfully use defective equipment as a "pretext" for stopping the citizen.

29. Mr. Donald pulled over promptly. Deputy Boyle approached the driver's side window and asked for license, registration, proof of insurance, the usual routine. The deputy apparently neglected to have Mr. Donald turn off the vehicle and/or remove the ignition keys.

30. Mr. Donald responded his license was suspended and he did not have the registration. He explained he had only recently restored the car to running condition. He gave the deputy his Washington I.D. card in lieu of a valid license and gave his correct address because the I.D. address was outdated.

31. Deputy Troupe joined the scene at about this time. She stepped up to the passenger side of the car. Deputy Boyle returned to his patrol car to check information on the vehicle.

32. Deputy Agar joined the scene in his patrol car. Deputy Boyle asked Deputy Agar to stay nearby. Deputy Agar parked. Deputy Troupe stayed at the front passenger window to observe Mr. Donald.

33. Deputy Troupe graduated from the law enforcement academy in April of 2020. She began the FTO program in May of that year and graduated in August. In January of 2021, she began a new assignment as a solo patrol officer.

34. Deputy Troupe was troubled by the messiness of the car. In an interview after the shooting, she described the interior as "very chaotic." She described her attitude toward Mr. Donald this way: "At no point in time did I think that he wasn't getting ready to hurt me in some way."

***HERRMANN LAW GROUP***
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

35.     In the clutter of the car Deputy Troupe saw an object she described as "this approximately three-to-five-inch metal spike with an end of it, and a ball handle." She referred to this object repeatedly in the interview as a weapon, never using the word "screwdriver," but photos later revealed it to be a standard screwdriver.

36.     She  told Mr. Donald to show his hands, even though she could see his hands "in his lap." She did not like how his hands were positioned in his lap and repeated her commands. At some point he held up a cell phone and pair of pliers to show he did not have any weapons. "You need to chill out," he said. She said the same thing or something similar to him.

37.     Deputy Boyle, hearing the tension in Deputy Troupe's voice, decided to return to the vehicle to "calm everything down."

38.     Deputy Boyle, "a very muscular person, very fit," was approximately seventy pounds heavier than Mr. Donald. He opened the driver's side door and told Mr. Donald to get out.

39.     Mr. Donald did not immediately comply. Without further request or explanation, the deputy immediately reaches into the car and grabs Mr. Donald and attempts to physically drag him out.

40.     Deputy Troupe comes around the vehicle and assists Deputy Boyle in his effort to wrestle Mr. Donald from the car. She grabs Mr. Donald's jaw and lifts his head in a "pain compliance" technique.

41.     Mr. Donald does not fight back, but passively resists. Deputy Troupe finds Mr. Donald's withdrawn, "relaxed" manner "unnerving."

42.     Deputy Boyle threatens Mr. Donald with his K-9, which is barking in his patrol vehicle. "You need to get out of the car or my dog's going to bite you." This is apparently a ruse as the deputy's "dog remote's stuck."

43.     Deputy Agar joins the fracas on foot, intending to help the other two deputies pull Mr. Donald from the car. Because there isn't space enough at the driver's

PLAINTIFF'S COMPLAINT - 7

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

door for three bodies, however, Deputy Agar backs off and attempts to contact dispatch to report the struggle.

44.     Mr. Donald continues to passively resist the effort to remove him from the car. Deputy Boyle leans into the car and punches Mr. Donald in the nose. "Really?" Mr. Donald says. This "diversionary tactic" fails.

45.     Making no progress in removing Mr. Donald by force, Deputy Boyle declines to step back and consider non-physical means of removing him from the car. Instead, Deputy Boyle endangers himself and everyone else at the scene by leaning into the car to engage in hands-on wrestling.

46.     Mr. Donald does not fight back, but continues to resist. Deputy Agar is standing by and recalls seeing Mr. Donald "using his feet to kick, um, or push Deputy Boyle away from him …"

47.     Deputy Boyle continues to order Mr. Donald to get out of the car. Deputy Trouple remembers Deputy Boyle's words as, "Get out of the car. I'm going to shoot you," or "Get out of the car or you're going to get shot."

48.     None of the deputies hear Mr. Donald threaten anyone and they never see him reach for a weapon or anything that could be used as a weapon.

49.     All three deputies are armed with Tasers and other non-lethal weapons.

50.     All three deputies report the car engine turned on or became louder during the tussle, which indicates the engine was likely never turned off and/or the keys were not removed from the ignition as it's implausible that Mr. Donald could pick up the keys and re-start the engine while resisting active force of two deputies.

51.     Somehow the gear shift, which is located on the center console between the front seats, is knocked into drive and the car begins to roll forward.

52.     With his "feet planted" on the ground outside the vehicle, Deputy Boyle draws his service weapon with his left hand and fires at Mr. Donald. The bullet hits the outside of the pillar between the front and back seats.

PLAINTIFF'S COMPLAINT - 8

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

53. After firing and missing, Deputy Boyle shoots a second round at Mr. Donald's head. The bullet enters Mr. Donald's skull.

54. In an interview five days after the shooting, Deputy Boyle, accompanied by a lawyer, claimed he feared he was going to be dragged by Mr. Donald as the car rolled. Evidence, however, indicates the deputy was standing outside the vehicle when he shot his weapon. He admits his feet were "planted on the ground" and the first bullet strike is on the outside of the pillar.

55. In the interview, Deputy Boyle further claimed that even *after* he shot Mr. Donald in the head, Mr. Donald "still had a hold of my vest." This is physically implausible given the evidence of the first bullet strike, the distance between the two men, their relative positions, and Mr. Donald's fatal head wound.

 

56. Deputy Troupe was standing near Deputy Boyle at the moment of the shooting and considers him a friend as well as a colleague. She did *not* report seeing Mr. Donald's hand on Deputy Boyle's vest.

57. Deputy Agar, who also considers Deputy Boyle a friend as well as a colleague, also did not report seeing Mr. Donald's hand on Deputy Boyle's vest. He was standing behind Deputy Boyle and Deputy Troupe.

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

58.    With Mr. Donald slumped over, the car continued to roll forward. After crossing a street, the car went into a yard, knocked over a fence, and stopped. All three deputies followed the car.

59.    Deputy Agar pulled Mr. Donald's body from the front seat. He saw "blood dripping from the wound." The deputy applied pressure to the area. Mr. Donald was "non-verbal."

60.    Fire and EMR arrived. They transported Mr. Donald to the hospital.

61.    His mother Sue and his brother Josh visited Mr. Donald repeatedly. He never regained consciousness.

62.    Seven days after the shooting, Mr. Donald died from the head wound.

**B.    CLARK COUNTY SHERIFF'S DEPARTMENT POLICIES, CUSTOMS, AND ESTABLISHED PRACTICES**

63.    About three months prior to killing Mr. Donald, Clark County Sheriff's Deputies shot and killed Kevin Peterson Jr., who was African American. Mr. Peterson attempted to sell 50 Xanax pills to an informant.

64.    Mr. Peterson, who was armed, was shot while running away from deputies. Deputy Robert Anderson, the first officer to shoot, said in an interview, "I just kinda drew the line in the sand … I've given the suspect enough commands. If he takes another step, I'm gonna shoot him." And he did shoot him, repeatedly.

65.    Another officer, Deputy Jonathan Feller, also shot at Mr. Peterson while he was running away. Deputy Feller's statements in his interview were at odds with both the physical evidence and his fellow officers.

66.    Deputy Anderson and Deputy Fuller were not terminated, suspended, disciplined, re-assigned, or re-trained by Clark County after the Peterson shooting.

67.    On or about January 29, 2022, Deputy Feller shot and killed an off-duty police officer, Donald Sahota. Within seconds of arriving at a crime scene, Deputy Feller hastily fired numerous rounds at the officer, striking him several times. The deputy apparently mistook the off-duty officer for a criminal suspect.

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

68.     In November of 2014, the Washington State Attorney General issued an opinion that law enforcement departments do not require the consent of individual officers to use body cameras.

69.     Clark County and Sheriff Atkins have declined to implement the use of body cameras at CCSD. None of the CCSD deputies were wearing body cameras at the time Mr. Donald, Mr. Peterson, and Officer Sahota were shot and killed.

70.     With deliberate indifference, Clark County has a policy, custom, and established practice of failing to supervise and train its officers to use deadly force only as a last resort as required by generally accepted police practices and federal and state law.

71.     With deliberate indifference, Clark County has a policy, custom, and established practice of failing to supervise and adequately train its officers on de-escalation techniques, non-lethal tactics, the decision-making process preceding use of deadly force, and how to interact safely with citizens suffering from behavioral health issues such as autism.

72.     With deliberate indifference, Clark County has a policy, custom, and established practice of racial discrimination, bias, and inadequate training. These policies, customs, and practices caused deputies in the case of Jenoah Donald to illegally pull over an African American driver, to unjustifiably fear an unarmed civilian who never threatened them, and to grossly overreact to passive resistance, among other problems for the community they are sworn to safeguard and protect.

73.     Each of these policies, customs, and established practices, described above and in other respects as well, were ratified by Clark County and/or Sheriff Atkins and/or other policy makers, and were a direct, proximate cause of Jenoah Donald's wrongful death.

## V.     CLAIMS

### FIRST CAUSE OF ACTION:  NEGLIGENCE - STATE CLAIM

74.     Plaintiffs hereby restate and incorporate by reference all paragraphs of this

*HERRMANN LAW GROUP*
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

Complaint as if fully set forth herein.

75.     All Defendants owed a duty to Plaintiffs to act as reasonable prudent persons. This duty includes an obligation to act in a careful, lawful and prudent manner and in full compliance with applicable law.   At all times relevant to this case, all individually named Defendants were acting within the course and scope of their employment. Clark County is liable for the negligence of all individually named Defendants.

76.     Defendants Clark County and Sheriff Atkins had a duty of care to properly train officers. Such training should reasonably have included instruction on the differences between lawful and unlawful stops and arrests, how to carry out lawful stops and arrests without using excessive force and brutality, best practices when detaining citizens with behavioral health issues such as autism, de-escalation techniques, and deadly force as a last resort, among other issues.

77.     By virtue of the facts set forth above, Defendant deputies, as law enforcement agents of Clark County, breached their duty to act as reasonable law enforcement officers by failing, neglecting and/or refusing to properly and fully discharge their responsibilities.

78.     Defendants Clark County and Sheriff Atkins were responsible for training and supervising the individually named Defendant deputies and had a duty to adequately train and supervise those deputies. Defendants acted negligently by failing to adequately and properly train and supervise the individually named deputies with respect to the discharge of their responsibilities and duties.

79.     As a proximate cause of Defendants' breach of their duties, Plaintiffs have suffered harm, entitling Plaintiffs to damages in an amount to be proven at trial, including, but not limited to, loss of income, loss of liberty, shock, extreme emotional distress, and anxiety, all of which have resulted in general damages for pain and suffering in an amount to be proven at trial.

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

**SECOND CAUSE OF ACTION: ASSAULT AND BATTERY - STATE CLAIM**

80.     Plaintiff hereby restate and incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

81.     By virtue of the facts set forth above, Defendant Deputies Boyle and Troupe are liable for assault and battery of Mr. Donald.

82.     Because Clark County and Sheriff Atkins could have prevented this assault and battery by exercise of due care by government employees, Clark County and Sheriff Atkins are liable for negligence resulting in the assault and battery of Mr. Donald.

83.     As a proximate result of the acts alleged herein, Plaintiffs suffered harm at the hands of Defendants Clark County, Sheriff Atkins and the deputies, entitling Plaintiffs to damages in an amount to be proven at trial.

**THIRD CAUSE OF ACTION: 42 U.S.C. § 1983 - EXCESSIVE FORCE AND BRUTALITY**

84.     Plaintiffs hereby restate and incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

85.     By virtue of the facts set forth above, all Defendants are liable for the deprivation of Mr. Donald's civil rights guaranteed by the Fourth Amendment to the Constitution of the United States and 42 U.S.C. § 1983, to be free from unreasonable searches and seizures, including excessive force and physical brutality.

86.     Such rights are long-standing and clearly established.

87.     Plaintiffs hereby restate and incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

88.     By virtue of the facts set forth above, Defendant Clark County is liable under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), in that a policy or custom can be inferred from a showing of ratification of an unconstitutional act and CCSD's policies, customs, and established practices.

**FOURTH CAUSE OF ACTION: 42 U.S.C. § 1983, UNREASONABLE SEIZURE**

89.     Plaintiffs hereby restate and incorporate by reference all paragraphs of this complaint as if fully set forth herein.

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

90.     By virtue of the facts set forth above, all Defendants are liable for the deprivation of civil rights of Mr. Donald, guaranteed by the Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983, to be free from unreasonable seizure, including unlawful traffic stops and shootings.

91.     Such rights are long-standing and clearly established.

92.     By virtue of the facts set forth above, Defendant Clark County is liable under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), in that a policy or custom can be inferred from a showing of ratification of an unconstitutional act and CCSD's policies, customs, and established practices.

FIFTH CAUSE OF ACTION: 42 U.S.C. § 1983, DEPRIVATION OF FAMILIAL RELATIONSHIP

93.     Plaintiffs hereby restate and incorporate by reference all paragraphs of this complaint as if fully set forth herein.

94.     By virtue of the facts set forth above, all Defendants are liable for the deprivation of civil rights of Plaintiffs in their individual capacities, guaranteed by the Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983, to be free from the deprivation of their liberty interest in a familial relationship with Mr. Donald without due process of the law.

## VI.     JURY DEMAND

95.     Plaintiffs hereby demands a trial by jury.

## VIII.     RELIEF REQUESTED

96.     Damages have been suffered by Plaintiffs and to the extent any state law limitations on such damages are purposed to exist, they are inconsistent with the compensatory, remedial and/or punitive purposes of 42 U.S.C. § 1983, and therefore any such alleged state law limitations must be disregarded in favor of permitting an award of the damages prayed for herein.

97.     WHEREFORE, Plaintiffs request a judgment against all Defendants:

(a)     Fashioning an appropriate remedy and awarding economic and noneconomic damages, including damages for pain, suffering, terror, loss of consortium,

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

1  and loss of familial relations, and loss of society and companionship pursuant to 42

2  U.S.C. §§ 1983 and 1988, in an amount to be determined at trial;

3      (b)        Punitive damages;

4      (c)        Awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C. §

5  1988, or as otherwise available under the law;

6      (d)        Declaring the defendants jointly and severally liable;

7      (e)        Awarding any and all applicable interest on the judgment; and

8      (f)        Awarding such other and further relief as the Court deems just and proper.

9      Respectfully submitted this 16th day of February, 2022.

10 *HERRMANN LAW GROUP*

11 */s/ Mark Lindquist*

12 _____

13 Mark Lindquist, WA #25076
   Attorney for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S COMPLAINT - 15