1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
9                              AT TACOMA
10

11  SUSAN ZAWACKY, individually, and as          CASE NO. 3:22-cv-05101-DGE
    Personal Representative of the Estate of
12  JENOAH DONALD, deceased;                     ORDER GRANTING IN PART
    ALEXZANDRA GASAWAY,                          AND DENYING IN PART
13  individually, and as guardian of minor child PARTIAL MOTION FOR
    I.D.; TIFFANY WALLWAY, individually,         SUMMARY JUDGMENT (DKT.
14  and as guardian of minor child S.W.;         NO. 74)
    KARLIE KOACH, individually, and as
15  guardian of minor child C.K.,

16                    Plaintiffs,
             v.
17
    COUNTY OF CLARK, a political
18  subdivision of the State of Washington;
    Sheriff's Deputy SEAN BOYLE; and
19  Sheriff's Deputy HOLLY DEZUBIRIA,

20                    Defendants.

21
22
23
24

ORDER GRANTING IN PART AND DENYING IN PART PARTIAL MOTION FOR SUMMARY JUDGMENT
(DKT. NO. 74) - 1

## I    INTRODUCTION

This matter comes before the Court on Defendant Holly DeZubiria's ("Deputy DeZubiria") motion for summary judgment (Dkt. No. 74). For the reasons discussed herein, the Court GRANTS in part and DENIES in part Deputy DeZubiria's motion.

## II    BACKGROUND

The matter before the Court involves the killing of Jenoah Donald ("Mr. Donald") by Defendant Deputy Sean Boyle ("Deputy Boyle") on February 4, 2021.[1]

Mr. Donald was 30 years old at the time of his death and had suffered from autism. (Dkt. No. 68 at 1.) He was "prone to withdrawal, especially when under stress," but enjoyed "mechanical tinkering and liked to work with engines." (*Id.* at 2.)

Deputy Boyle pulled over Mr. Donald in Vancouver, Washington on the night of February 4th for driving with a defective taillight and to investigate whether Mr. Donald's vehicle had a modified muffler. (Dkt. No. 77 at 2.) Deputy Boyle had "self-dispatched" to the

---

[1] The Court notes the parties reference a reenactment video (*see* Dkt. No 59-2) submitted by Plaintiffs to support their differing versions of the facts of this case. "Federal Rule of Civil Procedure 56 requires that the Court only consider admissible evidence at the summary judgment stage." *Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 926 (S.D. Cal. 2019). The Ninth Circuit has held "[a]uthentication is a 'condition precedent to admissibility,'" and courts may not consider unauthenticated documents at summary judgment. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The parties have not properly authenticated the reenactment video as Mr. Lee's affidavit does not comply with Federal Rule of Civil Procedure 56(c)(4), which requires "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Mr. Lee's affidavit does not specify how he received the reenactment video, who produced the reenactment video, or that the reenactment video submitted to the court is a true and accurate copy of the video ostensibly produced by the Defendants. (See Dkt. No. 59-1 at 2.) The Court does not consider the reenactment video in deciding this motion. Should the parties wish to use this video on other summary judgment motions or at trial, the parties should submit and properly authenticate such evidence to the Court.

area where he pulled over Mr. Donald in response to dispatch reports about suspicious circumstances. (Dkt. No. 32-1 at 11–12.) After arriving to the area, he witnessed a Mercedes drive past with an "extremely loud" muffler and decided to "initiate a traffic stop." (*Id.* at 12.) Mr. Donald initially cooperated with Deputy Boyle's requests and did not take any actions that made Deputy Boyle feel threatened. (Dkt. No. 70-1 at 37.) Mr. Donald purportedly told Deputy Boyle he was driving with a suspended driver's license. (Dkt. No. 77 at 2.)

While Deputy Boyle was investigating Mr. Donald, Deputy DeZubiria arrived at the scene. (Dkt. No. 32-1 at 13–14.) Deputy DeZubiria approached the vehicle from the passenger side. (Dkt. No. 70-2 at 8.) As she approached the vehicle, she saw clutter and Mr. Donald "curl[ing] his hands in." (*Id.* at 11.) Deputy DeZubiria twice asked Mr. Donald to show her his hands. (*Id.*) She asked Mr. Donald for a third time to show her his hands and he responded by reaching behind his back to present a pair of pliers and a phone, which he then discarded. (*Id.*) Deputy DeZubiria then allegedly instructed Mr. Donald to calm down, to which he responded that she needed to "chill out." (*Id.*)

In the meantime, Deputy Boyle had returned to his patrol vehicle to run information on the vehicle and Mr. Donald. (Dkt. No. 32-1 at 14.) Another deputy, Greg Agar ("Agar"), arrived on the scene. (*Id.*) According to Deputy Boyle, while he was back at his squad car he heard Deputy DeZubiria direct Mr. Donald to show her his hands and to chill out, and this prompted him to take action. (Dkt. No. 70-1 at 36.) He returned to Mr. Donald's vehicle from his patrol car intending to "[t]o de-escalate the situation by getting [Mr. Donald] out of the car and placing him into handcuffs." (*Id.*) Deputy Boyle opened the driver-side car door and attempted to remove Mr. Donald from the vehicle. (*Id.* at 37.) The facts, as presented by the parties, are muddled but it appears Deputy Boyle ordered Mr. Donald to exit the vehicle after he

opened the car door. (Dkt. No. 96-1 at 23.) Deputy Boyle did not ask Mr. Donald to remove the keys from the ignition nor to step out of the vehicle prior to opening the car door. (Dkt. Nos. 70-1 at 37; 70-2 at 16.)

Mr. Donald allegedly told Deputy Boyle "No" in response to his order to exit the vehicle. (Dkt. No. 96-1 at 23.) In response, Deputy Boyle grabbed Mr. Donald by the arm, but Mr. Donald still refused to exit the vehicle. (Dkt. No. 70-2 at 13–14.) Deputy Boyle, in response, proceeded to punch Mr. Donald in the face. (Dkt. No. 70-1 at 38.) Deputy Boyle was a K-9 handler and had access to his service dog, Jango, throughout his encounter with Mr. Donald. (*Id.* at 39.) He allegedly threatened to use Jango in order to force Mr. Donald into compliance. (Dkt. No. 70-5 at 5.) Mr. Donald did not threaten Deputy Boyle or Deputy DeZubiria at any point during the interaction. (Dkt. No. 70-2 at 14.) Mr. Donald may have kicked out at Deputy Boyle after being punched in the face, but it is unclear whether he made contact with Deputy Boyle. (Dkt. Nos. 70-1 at 40; 70-4 at 21.) After Deputy Boyle punched Mr. Donald, Deputy DeZubiria unsuccessfully attempted to pull Mr. Donald from the vehicle. (Dkt. No. 70-3 at 6.) She then grabbed Mr. Donald by the mandible in an attempt to use pain compliance to force him from the vehicle. (*Id.*)

The deputies failed to remove Mr. Donald from the car and at some point the vehicle started to slowly roll forward. (Dkt. No. 70-4 at 25.) Deputy Boyle fired his gun twice and one of the shots fatally wounded Mr. Donald. (Dkt. No 96-1 at 12.) The parties dispute whether Deputy Boyle was being dragged by Mr. Donald alongside the vehicle when he shot and killed him. (*See* Dkt. Nos. 77 at 2; 96-1 at 12, 16, 20; 96-2 at 8–9.)

Plaintiffs[2] filed suit on February 17, 2022, against Clark County, Deputy Boyle, Deputy DeZubiria, and Clark County Sheriff Chuck Atkins. (Dkt. No. 1.) Plaintiffs allege claims of negligence, assault and battery, excessive force in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983, unreasonable seizure in violation of the Fourteenth Amendment, and deprivation of familial relationship also in violation of the Fourteenth Amendment. (*Id.* at 11–14.)

On March 29, 2023, Deputy DeZubiria filed a motion for summary judgment as to all of Plaintiffs' claims against her. (Dkt. No. 74 at 1.) Deputy Boyle and Clark County also filed motions for summary judgment. (Dkt. Nos. 73, 76.) Defendants subsequently filed a separate motion for summary judgment seeking to dismiss Plaintiffs' Fourteenth Amendment claims. (Dkt. No. 82.) The Court struck this filing for failure to comply with Local Civil Rule 7(e). Plaintiffs filed their response to Defendants' summary judgment motions on April 17, 2023. (Dkt. No. 93.) On April 7, 2023, Defendants filed a motion for leave of court to file an additional summary judgment motion pursuant to Local Civil Rule 7(e). (Dkt. No. 88.) The Court held a hearing on April 20, 2023, and struck this additional motion, as well as Deputy Boyle and Clark County's pending motions for summary judgment, given Plaintiffs' need to conduct additional discovery. (Dkt. No. 100.) On April 21, 2023, Deputy DeZubiria filed her reply to Plaintiffs' opposition brief. (Dkt. No. 101.)

### III    DISCUSSION

**A. Legal Standard**

---

[2] Plaintiffs are Sue Zawacky, mother of Mr. Donald and representative of his estate, and Alexzaandra Gasaway, Tiffany Wallaway, and Karlie Koach, as guardians of Mr. Donald's minor children I.D., S.W., and C.K. (Dkt. No. 1 at 4.)

ORDER GRANTING IN PART AND DENYING IN PART PARTIAL MOTION FOR SUMMARY JUDGMENT (DKT. NO. 74) - 5

"Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Est. of Heath v. Pierce Cnty.*, No. 3:19-CV-06119-RJB, 2021 WL 2682513, at *3 (W.D. Wash. June 30, 2021). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court does not weigh the evidence or make credibility determinations at summary judgment. *Zetwick v. Cnty. Of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017). "The proper question for the district court is whether, viewing the facts in the non-moving party's favor, summary judgment for the moving party is appropriate." *Id.* In a deadly force case, "the judge must ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story—the person shot dead—is unable to testify" by accepting a "self-serving account." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

### B. Qualified Immunity

Deputy DeZubiria argues she is entitled to qualified immunity for her alleged excessive use of force on Mr. Donald. (Dkt. No. 74 at 6.)[3]

To determine whether an officer is entitled to qualified immunity, the Court must first "ask whether the facts taken in the light most favorable to the plaintiff show that the officer's conduct violated a constitutional right" and then assess "whether the right in question was clearly established at the time of the officer's actions, such that any reasonably well-trained officer

---

[3] Deputy DeZubiria does not appear to move for summary judgment on Plaintiffs' unreasonable seizure claim or other federal constitutional claims (Dkt. No. 1 at 14) and the Court therefore does not decide whether she is entitled to summary judgment on those issues.

ORDER GRANTING IN PART AND DENYING IN PART PARTIAL MOTION FOR SUMMARY JUDGMENT (DKT. NO. 74) - 6

would have known that his conduct was unlawful." *Orn v. City of Tacoma*, 949 F.3d 1167, 1174 (9th Cir. 2020).[4]

### a. Constitutional Violation

Claims of excessive force used to effectuate to an arrest or a seizure "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." *Graham v. Connor*, 490 U.S. 386, 388, (1989). Courts must balance the extent of the use of force and intrusion on individuals' Fourth Amendment rights "against the countervailing governmental interests at stake." *Id.* at 396. There is no set test to determine whether use of force may be reasonable—"in the end we must still slosh our way through the factbound morass of 'reasonableness.'" *Scott v. Harris*, 550 U.S. 372, 383 (2007). The Ninth Circuit has advised "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly," given that these cases often require weighing disputed facts and making credibility determinations. *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)

In determining whether a police officer used excessive force, the Court must "first consider[] the nature and quality of the alleged intrusion," and then "consider the governmental interests at stake by looking at (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011).

---

[4] The Supreme Court has held judges may exercise discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

ORDER GRANTING IN PART AND DENYING IN PART PARTIAL MOTION FOR SUMMARY JUDGMENT (DKT. NO. 74) - 7

Deputy DeZubiria argues her actions were objectively reasonable under the circumstances and "[t]here is no evidence or argument that the act of reaching into the car, touching Donald in an ultimately ineffective pain compliance hold, was illegal or excessive." (Dkt. No. 74 at 5–6.) In response, Plaintiffs argue Deputy DeZubiria's use of force was unreasonable because Mr. Donald was passively resisting and did not threaten or otherwise indicate a need for Deputy DeZubiria to use a pain compliance technique on Deputy Boyle. (Dkt. No. 93 at 44–45.) Deputy DeZubiria's two-page reply brief does not respond to Plaintiffs' passive resistance arguments. (*See* Dkt. No. 101.)

First, the Court must characterize the nature of the intrusion. Deputy DeZubiria placed Mr. Donald in a mandibular headlock after first trying to pull him out of the vehicle. (Dkt. No. 70-3 at 6.) A mandibular headlock "involves applying pressure to a nerve behind the jaw bone and pushing straight forward toward the chin." *Brownell v. Figel*, 950 F.2d 1285, 1288 (7th Cir. 1991). Plaintiffs offer no evidence indicating what effect this headlock had or would have had on Mr. Donald. The only evidence offered is Deputy DeZubiria's admission that she has experienced a mandibular headlock and that it is "painful." (*Id.*) She also confirmed she used this technique intending to cause Mr. Donald pain so he would comply with their attempts to remove him from the vehicle. (Dkt. No. 96-2 at 7.) "[P]hysical contact like hitting and shoving must be quantified based on the circumstances of the situation." *Seidner v. de Vries*, 39 F.4th 591, 597 (9th Cir. 2022). Here, the facts suggest Deputy DeZubiria's use of force was more than de minimis given the potential to cause pain and non-trivial.[5] However, without additional

---

[5] The Court acknowledges the Ninth Circuit has held use of pain compliance techniques on passively resisting individuals to not constitute excessive force. *See Liiv v. City of Coeur D'Alene*, 130 F. App'x 848, 852 (9th Cir. 2005) (holding use of chokehold and twisting wrists to force passively resisting arrestee to move did not constitute excessive force because resistance, when

ORDER GRANTING IN PART AND DENYING IN PART PARTIAL MOTION FOR SUMMARY JUDGMENT (DKT. NO. 74) - 8

evidence identifying the effect a mandibular headlock would have on a person, the Court cannot conclude it constitutes an intermediate use of force. *Cf. Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (holding use of taser in dart mode to constitute intermediate level of force).

      The Court next turns to the governmental interests at stake in the interaction. Though her interaction with Mr. Donald was brief, Deputy Dezubiria has admitted Mr. Donald did not threaten her or Deputy Boyle during the interaction. (Dkt. No. 70-2 at 14.) Mr. Donald was also not attempting to flee from the officers when Deputy DeZubiria assaulted him—he appears to have been passively resisting arrest. Though Deputy Dezubiria confidently asserts in her motion Mr. Donald was "guilty" of several crimes, construing the facts in favor of Mr. Donald he had at most committed a third degree misdemeanor, driving on a suspended license, *see* Washington Revised Code § 46.20.342(c), and otherwise was not actively resisting arrest at the time force was applied to remove him from his vehicle. *See Bryan*, 630 F.3d at 830 (noting that "noncompliance does not constitute 'active resistance' supporting a substantial use of force."); *see also Dominguez v. City of Scottsdale*, 587 F. Supp. 3d 914, 927 (D. Ariz. 2022) (assessing the severity of the crimes committed before the use of force when conducting *Graham* analysis). *But see Mattos*, 661 F.3d at 446 (noting that a person "actively resisted arrest insofar as she refused to get out of her car when instructed to do so and stiffened her body and clutched her steering wheel to frustrate the officers' efforts to remove her from her car.")

---

combined with "tense circumstances," made such use of force reasonable); *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994) (holding use of pain compliance techniques on anti-abortion demonstrators did not constitute excessive force because the risk of "organized lawlessness" justified use of force and attempts to disperse protestors). However, the Court finds those cases distinguishable as the background circumstances in those cases involved a heightened risk to the officers involved.

ORDER GRANTING IN PART AND DENYING IN PART PARTIAL MOTION FOR SUMMARY JUDGMENT (DKT. NO. 74) - 9

1    The Court agrees with Plaintiffs that it cannot determine as a matter of law that Deputy DeZubiria's use of force was excessive. Genuine disputes of material fact preclude summary judgment. Specifically, the nature and extent of Mr. Donald's resistance of Deputy Boyle's attempt to remove Mr. Donald from the vehicle, which prompted Deputy DeZubiria to use a mandibular headlock, is disputed by the parties. (*Compare* Dkt. No. 1 at 8 *and* 70-1 at 40 *with* Dkt No. 70-2 at 14 *and* 70-4 at 21, 24.)[6] A reasonable jury could find Deputy DeZubiria used excessive force given Mr. Donald's narrative of passive resistance, *see Dominguez*, 587 F. Supp. 3d at 932 (finding genuine dispute of material fact precluded awarding summary judgment on excessive force claim where individual passively resisted arrest), and the Court finds such disputes are properly left for the trier of fact to resolve.

       b. *Clearly Established Right*

However, even assuming Deputy DeZubiria's use of force was excessive, we find it was not clearly established that using a mandibular headlock to remove Mr. Donald from his vehicle violated his Fourth Amendment rights.

In analyzing whether the constitutional right was clearly established at the time of the alleged violation, "we ask whether its contours were 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mattos*, 661 F.3d at 442 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (cleaned up). The Court is mindful of the Supreme Court's admonition "not to define the right at issue at a high level of generality."

---

[6] The Court agrees with Deputy DeZubiria (Dkt. No. 101 at 2) that the opinion in Plaintiff's expert declaration from Gregory Gilbertson, which discusses the reasonableness of Deputy DeZubiria's use of force, is conclusory and the Court cannot credit it on summary judgment. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.").

ORDER GRANTING IN PART AND DENYING IN PART PARTIAL MOTION FOR SUMMARY JUDGMENT (DKT. NO. 74) - 10

*Orn*, 949 F.3d at 1178.  "[I]n the absence of binding precedent, we look to whatever decisional law is available to ascertain whether the law is clearly established for qualified immunity purposes, including decisions of state courts, other circuits, and district courts." *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004) (quoting *Drummond v. City of Anaheim*, 343 F.3d 1052, 1060 (9th Cir. 2003)) (cleaned up); *accord Thomas v. Cannon*, 289 F. Supp. 3d 1182, 1221 (W.D. Wash. 2018).

Deputy DeZubiria argues she is entitled to qualified immunity because "[n]o cases would put Deputy DeZubiria on notice that grabbing Donald's jaw to try and effect a lawful arrest was unconstitutional." (Dkt. No. 74 at 7.)  This defines the right too narrowly, however.  There need not be a case identical in facts to put an officer on notice that certain actions may constitute excessive force.  *al-Kidd*, 563 U.S. 731 at 741.

Nonetheless, the Court finds Plaintiffs have not identified cases sufficient to put Deputy DeZubiria on notice that her actions were unlawful.  Plaintiffs cite to several cases which may be sufficient to show Deputy Boyle[7] violated a clearly established right (Dkt. No. 93 at 44), but these cases do not provide sufficient notice to Deputy DeZubiria.  *Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012) dealt with whether the use of pepperball pellets to disperse an uncooperative group of underage partygoing students was excessive.  The force at issue in *Nelson* is clearly greater than what was applied here since the plaintiff in *Nelson* was struck in the eye by a pepperball and suffered "temporary blindness and a permanent loss of visual acuity."  *Id.* at 879.  *Young v. Cnty. of Los Angeles*, 655 F.3d 1156  (9th Cir. 2011), similarly, dealt with the use of force on an uncooperative driver who refused to sit in his truck and was

---

[7] The Court makes no judgment at this time as to whether Deputy Boyle used excessive force when he punched Mr. Donald.

ORDER GRANTING IN PART AND DENYING IN PART PARTIAL MOTION FOR SUMMARY JUDGMENT (DKT. NO. 74) - 11

pepper sprayed in response. *Id.* at 1160. Unlike in the instance case, the Ninth Circuit has held on repeated occasions the use of pepper spray constitutes an intermediate use of force and it is clearly excessive to use such force on a passively resisting individual. *Id.* at 1161, 1166; *see also Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013) (discussing cases involving use of intermediate force). *Headwaters Forest Def. v. Cnty. of Humboldt*, 276 F.3d 1125, 1128 (9th Cir. 2002) also involved the use of pepper spray. And other courts have found the use of a mandibular headlock to not constitute excessive force. *See, e.g.*, *Brownell v. Figel*, 950 F.2d 1285, 1293 (7th Cir. 1991) (holding use of mandibular headlock did not constitute excessive force given balance between limited nature of force and governmental interest in determining whether driver was intoxicated); *Anderson v. Winston-Salem Police Dep't*, No. 1:20CV596, 2022 WL 3586022, at *21 (M.D.N.C. Aug. 22, 2022), *report and recommendation adopted sub nom. Anderson v. Ferguson*, No. 1:20CV596, 2022 WL 4237518 (M.D.N.C. Sept. 14, 2022) (finding use of pressure point to prevent ongoing, active resistance was reasonable).

In light of this case law, the Court cannot say Deputy DeZubiria was on notice that her actions were unconstitutional. Accordingly, the Court finds Deputy DeZubiria is entitled to qualified immunity as to Plaintiffs' excessive force claim because she could reasonably believe her actions were lawful.

### C. Other Defenses

The Court denies summary judgment as to Plaintiffs' state law claims against Deputy DeZubiria.

Deputy DeZubiria argues she is entitled to summary judgment as to Plaintiffs' state law claims because Mr. Donald committed felony assault on Deputy Boyle and Washington Revised Code § 4.24.420 provides it "is a complete defense to any action for damages for personal injury

or wrongful death that the person injured or killed was engaged in the commission of a felony at the time of the occurrence causing the injury or death and the felony was a proximate cause of the injury or death."

Construing the facts in Mr. Donald's favor, the Court cannot find Deputy DeZubiria is entitled to a felony defense to Plaintiffs' assault and battery claim. As discussed above, there is a genuine dispute of fact over whether Mr. Donald actually kicked Deputy Boyle. None of the other alleged crimes Mr. Donald committed were felonies. Driving on a suspended license, as noted, was a third degree misdemeanor. Obstructing a police investigation and resisting arrest are also misdemeanors. *See* Wash. Rev. Code §§ 9A.76.040(2), 9A.76.020(3). The Court, therefore, cannot conclude as a matter of law that Deputy Dezubiria is entitled to summary judgment because there is a genuine dispute about whether Mr. Donald assaulted Deputy Boyle in response to being punched in the face.

## IV   CONCLUSION

Accordingly, and having considered Deputy DeZubiria's motion (Dkt. No. 74), the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Deputy DeZubiria's motion for summary judgment is GRANTED as to Plaintiffs' excessive force claim and is DENIED as to all other claims.

Dated this 16th day of May, 2023.



David G. Estudillo
United States District Judge