UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| SUSAN ZAWACKY, et al.,<br><br>        Plaintiffs,<br>    v.<br><br>CLARK COUNTY, et al.,<br><br>        Defendants. | CASE NO. C22-5101-KKE<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

On February 4, 2021, Defendant Clark County Sheriff Deputy Sean Boyle fatally shot Jenoah Donald.  Plaintiffs[1] filed this suit alleging multiple claims arising from Mr. Donald's death against Deputy Boyle, Clark County Sheriff Deputy Holly DeZubiria, Clark County Sheriff Chuck Atkins, and Clark County.[2]  Defendants Deputy Boyle and Clark County now move for summary judgment on Plaintiffs' claims against them.  Dkt. No. 113 at 2.  After considering the parties' briefing,[3] the oral argument of counsel, and the rest of the record, the Court grants in part and denies in part the motion.

---

[1] Plaintiffs are Susan Zawacky, mother of Mr. Donald and representative of his estate; and Alexzandra Gasaway, Tiffany Wallway, and Karlie Koach, as guardians of Mr. Donald's minor children, I.D., S.W., and C.K.  Dkt. No. 1 at 4.

[2] All claims against Atkins were previously dismissed without prejudice (Dkt. No. 25), and the Court found that Deputy DeZubiria is entitled to qualified immunity on Plaintiffs' excessive force claim against her (Dkt. No. 104 at 13).

[3] This order refers to the parties' briefing using the CM/ECF page numbers.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1

1

## I.   BACKGROUND

2

**A.   Undisputed Facts**

3

On the evening of February 4, 2021, Deputy Boyle responded to a report of suspicious

4

vehicles near a home allegedly known to the Clark County Sheriff's Office from prior contacts.

5

Dkt. No. 32-1 at 11–12.  Deputy Boyle observed a car near the house that matched the description

6

in the report and noticed that the car had a defective or modified exhaust.  *Id.* at 12–13.  The vehicle

7

was driven by Mr. Donald.

8

Deputy Boyle stopped Mr. Donald and asked for his driver's license and registration.  Dkt.

9

No. 32-1 at 13.  Mr. Donald responded that his license was suspended and that he did not have

10

registration or proof of insurance for the vehicle.  *Id.*  Mr. Donald provided Deputy Boyle with an

11

identification card and his updated address.  *Id.* at 13–14.  Deputy DeZubiria, who had also

12

responded to the initial call, approached the passenger side of Mr. Donald's car.  *Id.* at 13.  Deputy

13

Boyle returned to his patrol car to investigate.  *Id.*  Around this time, a third deputy, Greg Agar,

14

arrived on the scene.  *Id.* at 14.  Deputy DeZubiria asked Mr. Donald twice to show her his hands.

15

Dkt. No. 70-2 at 11.  The third time she asked, Mr. Donald pulled out pliers and a phone from

16

behind his back, which he showed to Deputy DeZubiria and then discarded.  *Id.*  Deputy DeZubiria

17

told Mr. Donald to "chill out," and he told her to "chill out."  *Id.*

18

Upon hearing Deputy DeZubiria's exchange with Mr. Donald, Deputy Boyle returned to

19

Mr. Donald's car.  Dkt. No. 32-1 at 14.  Deputy Boyle opened the driver's side door and ordered

20

Mr. Donald to exit the vehicle.  *Id.*  Mr. Donald responded "No."  *Id.*  Deputy Boyle then attempted

21

to forcibly remove Mr. Donald by pulling on his left arm.  *Id.*  Mr. Donald pulled away.  *Id.*  Deputy

22

DeZubiria joined Deputy Boyle on the driver's side of the car.  Deputy Boyle punched Mr. Donald

23

in the face, fracturing his nose, as an alleged diversionary tactic.  *Id.*, Dkt. No. 70-9 at 8.  At some

24

point during this interaction, Deputy DeZubiria applied a "mandibular grab"[4] to Mr. Donald to try to remove him from the car.  Dkt. No. 70-3 at 6, Dkt. No. 70-9 at 8.  Ultimately, the deputies' attempts to remove Mr. Donald were unsuccessful.  Dkt. No. 32-1 at 15.  The struggle continued, and, as detailed below, the nature of that struggle is contested.

Deputy Boyle subsequently shot his firearm twice with his dominant left hand.  Dkt. No. 32-1 at 16, 32.  One bullet hit the outside of the vehicle at a height of 45 inches from the ground with a "back-to-front and downward" trajectory.  Dkt. No. 69 ¶ 5.  The other bullet hit Mr. Donald in the head, fatally wounding him.  *Id.* ¶ 6.

## B.   Disputed Facts

The parties advance differing accounts of what occurred during the time between Deputy Boyle punching Mr. Donald and the shots being fired.

According to Plaintiffs, after Deputy Boyle punched Mr. Donald, the car "was somehow knocked into drive" and began to roll forward.  Dkt. No. 118 at 7.  Deputy Boyle, standing next to the rolling car, fired his gun toward the car twice.  *Id.*  The first bullet hit the outside of the car. *Id.*  The second shot hit Mr. Donald in the head.  *Id.*

According to Defendants, Mr. Donald kicked at or toward Deputy Boyle while he was trying to pull Mr. Donald out of the car.  Dkt. No. 113 at 4.  Mr. Donald then laced his arm through Deputy Boyle's ballistics vest, started the car, and began rapidly accelerating while holding on to Deputy Boyle's vest.  *Id.* at 4–5.  Deputy Boyle warned Mr. Donald that he would shoot if Mr. Donald did not let go of the vest.  *Id.* at 5.  Mr. Donald did not let go, and Deputy Boyle, fearing for his life, drew his gun and fired twice as he was being dragged alongside the car.  *Id.*

---

[4] Also referred to in prior orders as a "mandibular headlock" (Dkt. No. 104 at 8), this is a "pain compliance" technique. Dkt. No. 96-3 at 4.  When asked to describe this maneuver, Deputy DeZubiria stated that she "grabbed the right side of [Mr. Donald's] face underneath the mandible … at the very bottom [of the jawbone.]  I was taught that if you curl your fingers just underneath and lift forward that the person—it's easier to come out of the car."  Dkt. No. 70-3 at 6.

**C.     Procedural History**

Plaintiffs filed this suit in February 2022.  Dkt. No. 1.  Plaintiffs allege state-law claims for negligence and assault and battery, and federal constitutional claims for excessive force, unreasonable seizure, and deprivation of familial relationship under 42 U.S.C. § 1983.[5]  *Id.* at 11–14.

Deputy Boyle and the County ("Defendants")[6] seek summary judgment on all claims against them.  Dkt. No. 113.[7]   The motion is now ripe for adjudication.

## II.    ANALYSIS

**A.     Legal Standards**

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law.  *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Acct. No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)).

---

[5] 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State …, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]"

[6] While the docket states this motion was also filed by Deputy DeZubiria, Defendants confirmed at oral argument that this motion is brought only by Deputy Boyle and Clark County.  Dkt. No. 125 at 3.

[7] Defendants' motion does not address the claims for deprivation of familial relationship or unconstitutional seizure. When asked at oral argument whether they request summary judgment on those claims as well, Defendants asserted that those claims rise and fall with the excessive force claim.  Dkt. No. 125 at 5.  Because the excessive force claims survive, for reasons explained below, the remaining constitutional claims against Defendants survive as well.

Also, Defendants erroneously claim in their motion that all federal claims against Deputy DeZubiria were previously dismissed when the Court granted in part her motion for summary judgment.  *See* Dkt. No. 113 at 2.  But in the Court's prior order, it noted that Deputy DeZubiria moved for summary judgment only on the excessive force claim, but not the other constitutional claims.  Dkt. No. 104 at 6 n.3.  At oral argument, when asked about this discrepancy, defense counsel stated that the remaining federal claims against Deputy DeZubiria were subsequently dismissed in a separate order.  Dkt. No. 125 at 4.  However, the docket reflects no such ruling.  Because only the excessive force claim has been adjudicated with respect to Deputy DeZubiria, the unadjudicated federal claims against her remain live at this time and are not addressed further in this order.

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

The Court does not resolve evidentiary conflicts or make credibility determinations in ruling on a motion for summary judgment. *Gonzalez v. City of Anaheim*, 747 F.3d 789, 795 (9th Cir. 2014). Rather, such determinations are left to the province of the jury at trial. *Id*. at 795–97. In the context of a motion for summary judgment in a deadly force case, "the judge must ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story—the person shot dead—is unable to testify" and "may not simply accept what may be a self-serving account by the police officer." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). Rather, "[t]he judge must carefully examine all the evidence in the record, such as medical reports, contemporaneous statements by the officer and the available physical evidence, as well as any expert testimony proffered by the plaintiff, to determine whether the officer's story is internally consistent and consistent with other known facts." *Id.*

The Court "must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational factfinder that the officer acted unreasonably." *Id.* "Unless [a plaintiff's] version of events is 'blatantly contradicted by the record, so that no reasonable jury could believe it,' we must assume that a jury could find [a plaintiff's] account of what happened credible, even if it conflicts with [a defendant's] account." *Orn v. City of Tacoma*, 949 F.3d 1167, 1171 (9th Cir. 2020) (quoting *Scott*

*v. Harris*, 550 U.S. 372, 378 (2007).  "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," summary judgment "in excessive force cases should be granted sparingly."  *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (cleaned up).

**B.    Defendants Are Not Entitled to Summary Judgment on the Excessive Force Claims.**

Plaintiffs allege that Deputy Boyle used excessive force first when he punched Mr. Donald, and second when he shot Mr. Donald.  Dkt. No. 118 at 42, 46.  Defendants' briefing does not address the propriety of the punch, and instead focuses only on whether Deputy Boyle's use of deadly force was reasonable.  Dkt. No. 113 at 8–10.  The Court will first set forth the relevant legal standards that apply to Plaintiffs' excessive force claims, and then turn to consider the punch and shooting in turn.

1.   Legal Standards

Claims of excessive force used to effectuate an arrest or seizure "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard."  *Graham v. Connor*, 490 U.S. 386, 388 (1989).  In determining reasonableness, "the nature and quality of the intrusion on the individual's Fourth Amendment interests" must be balanced against the "countervailing government interests at stake."  *Id.* at 396 (cleaned up).   "[P]roper application" of the reasonableness test

> requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id*.  Whether the suspect poses a threat to the safety of officers or others is "the most important single element of the three specified factors."  *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994).

"An officer's use of *deadly* force is reasonable only if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'"  *Scott*, 39 F.3d at 914 (quoting *Tennessee v. Garner*, 471 U.S. 1, 3 (1985).  "The question on summary judgment 'is whether a reasonable jury would necessarily find that [the officer] perceived an immediate threat of death or serious physical injury at the time he shot' the decedent."  *Selto v. Clark Cnty.*, No. 22-cv-5384, 2023 WL 6311284, at *4 (W.D. Wash. Sept. 28, 2023) (quoting *Gonzalez*, 747 F.3d at 794).

2.  <u>A Reasonable Jury Could Find That Deputy Boyle Used Excessive Force When He Punched Mr. Donald in the Face.</u>

The Court first considers whether a reasonable fact-finder could conclude that Deputy Boyle's punch of Mr. Donald amounts to excessive force.

First, the Court considers the "nature and quality" of the force involved.  *See Mattos v. Agarano*, 661 F.3d 433, 443 (9th Cir. 2011).  "Impact blows, such as face punches … are generally considered significant intermediate force that intrudes on an individual's Fourth Amendment rights."  *Huerta v. Cnty. of Tulare*, No. 1:17-CV-01446-EPG, 2024 WL 871729, at *6 (E.D. Cal. Feb. 28, 2024).  "Intermediate force" is a category of force that includes, but is not limited to, use of pepper spray, tasers, and strikes; it is "the most severe force authorized short of deadly force." *Smith*, 394 F.3d at 702; *see also Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1161–63 (9th Cir. 2011) (use of intermediate force is a "sufficiently serious intrusion upon liberty that it must be justified by a commensurately serious state interest.").

In order to determine whether the jury could find that Deputy Boyle's punch was a reasonable use of intermediate force, the Court considers the *Graham* factors.  The first *Graham* factor—the severity of the crime at issue—does not support the use of intermediate force, because Mr. Donald was suspected of committing misdemeanors.  *See Nelson v. City of Davis*, 685 F.3d

867, 879–80 (9th Cir. 2012) (the fact that plaintiff committed at most a misdemeanor "weighs heavily against" officers' use of a pepperball projectile).

The second *Graham* factor—whether Mr. Donald posed an immediate threat to Deputy Boyle or others at the time of the punch—also suggests that the punch was unreasonable. Although Mr. Donald was refusing to comply with the deputies' request to exit his car at the time Deputy Boyle punched him, no officer testified that he threatened them verbally or physically. *See, e.g.*, *Mattos*, 661 F.3d at 444 (finding that where a suspect is not verbally or physically threatening at the time of the use of force, then the second *Graham* factor indicates low governmental interest in a use of force); *Young*, 655 F.3d at 1163 (where driver committed traffic violation and refused commands to return to his vehicle but was otherwise non-violent, this factor "decisively" favored finding use of strikes and pepper spray was excessive).

Finally, the Court considers the third *Graham* factor: whether Mr. Donald was "actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Resistance that is not "particularly bellicose" does not support the use of intermediate force. *See Smith*, 394 F.3d at 703 (suspect continually ignoring officer commands to remove his hands from his pockets and not re-enter his home, and physically resisting for a brief time, did not support application of intermediate force).

Here, prior to Deputy Boyle punching him in the face, it is undisputed that Mr. Donald responded "No" when asked to step out of his car, and physically resisted when Deputy Boyle pulled on his arm. Dkt. No. 32-1 at 14–15. While the record is inconclusive as to whether Deputy DeZubiria applied the mandibular grab to try to remove Mr. Donald from the car before or after Deputy Boyle punched Mr. Donald, in either event, a reasonable jury could find that this degree of resistance would not support the use of intermediate force. *See, e.g.*, *Mattos*, 661 F.3d at 446 (finding that a reasonable fact-finder could conclude that officers used excessive force when tasing

a plaintiff who "actively resisted arrest insofar as she refused to get out of her car when instructed to do so and stiffened her body and clutched her steering wheel to frustrate the officers' efforts to remove her from her car").

Thus, all of the *Graham* factors suggest that Mr. Donald's constitutional rights were not outweighed by countervailing government interests, and Defendants have not identified any other aspects of the situation that would indicate otherwise.  Although Defendants note, accurately, that officers are entitled to "use force" to carry out an arrest or investigatory stop (Dkt. No. 121 at 5), they make no effort to address whether Deputy Boyle's use of the punch as a "distraction strike" (*id*. at 6) was reasonable under the circumstances.  Because, as the Court has explained, a reasonable fact-finder could find that Deputy Boyle's punch was not reasonable and therefore unconstitutional, Defendants are not entitled to summary judgment on this claim.

      3.   <u>A Reasonable Jury Could Find Deputy Boyle Used Excessive Force When He Shot Mr. Donald.</u>

The Court now turns to consider whether a reasonable fact-finder could conclude that Deputy Boyle's use of deadly force against Mr. Donald was unconstitutionally excessive.

"The 'most important' consideration in assessing the reasonableness of using deadly force is 'whether the suspect posed an immediate threat to the safety of the officers or others.'"  *Est. of Hernandez by & through Hernandez v. City of Los Angeles*, 96 F.4th 1209, 1217 (9th Cir. 2024) (quoting *Mattos*, 661 F.3d at 441).

Defendants argue that "Deputy Boyle believed he would be dragged to his death had he not shot and killed Donald," and, "[g]iven the fact that Donald had grabbed the vest, was refusing all lawful commands and had started to accelerate the car, this shooting meets the reasonableness test of the case law."  Dkt. No. 113 at 10.

1   Plaintiffs dispute the factual premise of Defendants' argument in several material respects.

2   As evidence to support their version of the facts, Plaintiffs point to inconsistencies between

3   statements made by Deputy Boyle during the investigation as to the order of the shots,[8] Deputy

4   Boyle's body position while firing the shots,[9] and if, when, and how Deputy Boyle broke Mr.

5   Donald's grip on his vest.[10]   Plaintiffs also highlight the inconsistencies between Deputy Boyle's

6   descriptions of the shooting and the physical evidence (*see e.g.*, Dkt. No. 118 at 23–27, 37; Dkt.

7   94-1 at 2-6) as well as the size and strength discrepancies between Mr. Donald and Deputy Boyle

8   (Dkt. No. 118 at 8, 11, 28).   Although Defendants argue at length that the Court should discredit

9   Plaintiffs' evidence, and repeatedly refer to their version of the facts as "undisputed," it is not.   *See*

10  Dkt. No. 113 at 2, 5, 10; Dkt. No. 121 at 12.   To the contrary, there are myriad factual disputes

11  over the conduct of Mr. Donald and Deputy Boyle at the time of the shooting that cannot be

12  resolved on summary judgment.   *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

13  (1986) ("[A]t the summary judgment stage the judge's function is not [] to weigh the evidence and

14  determine the truth of the matter but to determine whether there is a genuine issue for trial.").

15

16

---

17  [8] At oral argument, defense counsel conceded "Deputy Boyle has given two different statements.  In one statement, he said the first shot went into the B-pillar.  In his deposition, he said he didn't know the sequence of the shots."  Dkt. No. 125 at 12–13.

18
19  [9] In Deputy Boyle's law enforcement interview, he stated he did not get out of the car until after firing both shots.  Dkt. No. 32-1 at 35.  At his deposition, he agreed that when he fired the second shot, he was "standing outside of the car with both [] feet planted" (Dkt. No. 96-1 at 12), but then later testified that he was never outside the vehicle until after both shots were fired (Dkt. No. 96-1 at 16).  He also testified variously that his legs were "planted" (Dkt. No. 32-1 at 15) but also that he was in the car "rolling toward the B-pillar" when the shooting occurred (Dkt. No. 96-1 at 11).  Plaintiffs emphasize that the various reenactment photos and animations created by Defendants' experts contradict each other (and Deputy Boyle's testimony) with respect to his body position when the shots were fired, and further fail to address the shot that struck the exterior of the vehicle altogether.  Dkt. No. 94-1 at 5-7.

20
21
22  [10] Deputy Boyle stated in his law enforcement interview, "after that second shot … he still had a hold my vest, so I swept his arm off of my vest."  Dkt. No. 32-1 at 17, 35.  In his deposition, Deputy Boyle testified that Mr. Donald "finally let go as the car drove across the street," and that he did not remember telling deputies that he broke Mr. Donald's grip at some point.  Dkt. No. 96-1 at 20.  By contrast, Plaintiffs dispute whether Mr. Donald ever grabbed Deputy Boyle's vest at all, citing to evidence that Mr. Donald's DNA was not detected on the vest, though other DNA was.  Dkt. No. 51-4 at 5; Dkt. No. 118 at 20.

23
24

These disputed issues go to the heart of whether Mr. Donald posed an immediate threat to Deputy Boyle, the "'most important' *Graham* factor" in assessing the reasonableness of deadly force. *Mattos*, 661 F.3d at 441 (citing *Smith*, 394 F.3d at 702). They also implicate whether and to what extent Mr. Donald was resisting, and whether the deputies reasonably considered less intrusive methods to effect the arrest. *See Bryan v. MacPherson*, 630 F.3d 805, 831 n.15 (9th Cir. 2010) (noting "settled principle" that "officers must *consider* less intrusive methods of effecting the arrest and that the presence of feasible alternatives is a *factor* to include in [the *Graham*] analysis."); *Smith*, 394 F.3d at 703 (considering the force used, the three *Graham* factors, and "the availability of other means of accomplishing the arrest, it is evident that the question whether the force used [] was reasonable is a matter that cannot be resolved in favor of the defendants on summary judgment.").

Accepting Plaintiffs' version of the facts as true, as the Court must, a reasonable jury could conclude that Mr. Donald was not holding on to Deputy Boyle's vest and that Deputy Boyle fired his gun from a standing position outside and to the rear of Mr. Donald's vehicle. A reasonable fact-finder could therefore discredit Deputy Boyle's claim that at the time of the shooting, he reasonably feared he would be "dragged to his death." Dkt. No. 113 at 5; *see Thomas v. Cannon*, Nos. 3:15-05346 BJR & 3:16-cv-05392, 2017 WL 2289081, at *10 (W.D. Wash. May 25, 2017) (reasonable fact-finder could find an officer's account of risk of serious harm sufficient to justify deadly force was not credible); *see also Orn*, 949 F.3d at 1175 ("[W]e cannot analyze the case through [Defendant's] lens because [that] version of events conflicts with the facts construed in the light most favorable to [Plaintiff].").

Because Plaintiffs' version of the facts would support a finding that Deputy Boyle's uses of force were unconstitutional, the Court denies Defendants' motion for summary judgment on Plaintiffs' excessive force claims.

**C.    Deputy Boyle Is Not Entitled to Qualified Immunity.**

Defendants contend that even if they are not entitled to summary judgment on Plaintiffs' excessive force claims, Deputy Boyle is nonetheless entitled to qualified immunity.  *See, e.g.*, Dkt. No. 113 at 12.  The Court will first set out the legal standards on qualified immunity, and then turn to consider whether Deputy Boyle is entitled to qualified immunity as to the punch or the shooting.

1.   Legal Standards

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  Defendants are entitled to qualified immunity as a matter of law if, when the facts are viewed in the light most favorable to the plaintiffs, "they violated no clearly established constitutional right.  The court must deny the motion for judgment as a matter of law if reasonable jurors could believe that [d]efendants violated [the plaintiff's] constitutional right, and the right at issue was clearly established."  *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008).

In evaluating whether the contours of the constitutional right were clearly established, the Court must not "define the right at issue at a high level of generality."  *Orn*, 949 F.3d at 1178. There need not be a case identical in facts to put an officer on notice that certain actions may constitute excessive force, "but existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft*, 563 U.S. at 741.

2.   Deputy Boyle Is Not Entitled to Qualified Immunity for the Punch.

To determine whether Deputy Boyle is entitled to qualified immunity for punching Mr. Donald in the face, the Court first considers whether a reasonable jury could find Deputy Boyle violated Mr. Donald's constitutional rights in doing so.   For the reasons explained *supra*, a

reasonable jury could find that the punch constituted excessive force, and therefore the first prong of the qualified immunity test is satisfied.

The Court also finds that the second prong is satisfied because, if Plaintiffs' version of the facts is accepted, it was clearly established at the time of the punch in 2021 that such a use of force would be unconstitutional. *See, e.g.*, *Mattos*, 661 F.3d at 446 (finding that a reasonable fact-finder could conclude that officers used excessive force when tasing a suspect who did not pose an immediate threat, although she "actively resisted arrest insofar as she refused to get out of her car when instructed to do so and stiffened her body and clutched her steering wheel to frustrate the officers' efforts to remove her from her car"); *Smith*, 394 F.3d at 703 (that a suspect repeatedly ignored commands to remove his hands from his pockets and not re-enter his home, and physically resisted for a brief time, did not support application of intermediate force). Defendants cite no authority to the contrary; rather, they failed to respond in any way to Plaintiffs' arguments about the constitutionality of the punch. *See* Dkt. No. 121 at 2–3, 5.

Under these circumstances, the Court concludes that Deputy Boyle is not entitled to qualified immunity on Plaintiffs' claim arising from the punch.

3.  <u>Deputy Boyle Is Not Entitled to Qualified Immunity for the Shooting.</u>

With respect to the shooting, Defendants argue that Deputy Boyle is entitled to qualified immunity because "[n]o cases would put Deputy Boyle on notice that shooting Donald to avoid being dragged to his death was unconstitutional." Dkt. No. 113 at 12. As the Court has explained however, there are factual disputes over whether Deputy Boyle was in fact at risk of being dragged to his death at the time of the shooting. A reasonable jury could credit Plaintiffs' evidence that Deputy Boyle shot Mr. Donald while standing up next to his car, while the car moved away from him, which is inconsistent with any threat of dragging. *See, e.g.*, Dkt. No. 94-1 at 3 (Plaintiffs' expert's report: "For a fired bullet from Deputy Boyle to strike the exterior side of the 'B' pillar,

the firearm must be positioned outside of the vehicle and above the impact location (above approximately 45 inches from the ground and away from the side far enough to not generate significant gunshot residue onto the pillar).").

As Defendants acknowledge, the Ninth Circuit has denied qualified immunity to an officer under factual circumstances like those alleged by Plaintiffs here. *See Orn*, 949 F.3d at 1178–80. In that case, the facts viewed in the light most favorable to the plaintiff indicated that an officer shot a suspect driving a slow-moving car, while the officer was not in the car's path of travel. *Id.* at 1174–76. The court found that because the officer "could not reasonably have feared for his own safety because he was on the side of Orn's vehicle as it was traveling away from him," the officer's use of deadly force against the suspect was unreasonable. *Id.* The *Orn* court also found that the officer was not entitled to qualified immunity because at the time of the shooting in 2011, it was clearly established that "an officer lacks an objectively reasonable basis for believing that his own safety is at risk when firing into the side or rear of a vehicle moving away from him." *Id.* at 1178.

Plaintiffs' version of the facts is strikingly similar to the factual allegations accepted as true in *Orn*.[11] That case therefore provided notice to Deputy Boyle in 2021 that shooting into a car moving away from him, from a position outside the car's path of travel, is unconstitutional, and thus the second prong of the qualified immunity test has been met. *See Sharp v. Cnty. Of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (explaining that to show that a right was clearly established, a plaintiff "must point to prior case law that articulates a constitutional rule specific enough to alert *these* deputies *in this case* that *their particular conduct* was unlawful").

---

[11] Defendants acknowledged as much at oral argument, noting that, in light of *Orn*, the Court must accept their own version of the facts instead of Plaintiffs' version to find Boyle is entitled to qualified immunity. *See* Dkt. No. 125 at 17.

Because Plaintiffs' allegations would support a finding that Deputy Boyle's use of deadly force was unconstitutional, and that clearly established law notified Deputy Boyle that his conduct was unconstitutional, Deputy Boyle is not entitled to qualified immunity on this claim.  Although Defendants vigorously contest Plaintiffs' factual allegations, "[f]actual disputes of that order must be resolved by a jury, not by a court adjudicating a motion for summary judgment." *Orn*, 949 F.3d at 1181.

**D.    Defendants' Motion for Summary Judgment on Plaintiffs' Constitutional Claims Against Clark County Is Granted in Part and Denied in Part.**

Municipalities and other bodies of local government are "persons" subject to liability under 42 U.S.C. § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).  There are three pathways to municipal liability for constitutional violations under Section 1983: (1) the municipality's official policies or customs inflict the constitutional injury, (2) the municipality's omissions or failures to act suggest an unofficial policy of deliberate indifference to the constitutional rights of others, or (3) a municipal policymaker ratifies a subordinate's unconstitutional conduct.  *See Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010).

Defendants argue that no evidence supports Clark County's liability on Plaintiffs' constitutional claims and that the County is therefore entitled to summary judgment as a matter of law. Dkt. No. 113 at 13–17.  Specifically, Defendants argue that none of the pathways to municipal liability are viable here, because: (1) there was no official or unofficial County policy that caused the alleged constitutional violation, (2) Deputy Boyle was fully trained and Plaintiffs have not shown that any deficiencies in his training demonstrate "deliberate indifference" to the

constitutional rights of others, and (3) there is no proof that any County official ratified an unconstitutional act.  *Id*.

Plaintiffs oppose Defendants' motion on all three grounds, arguing that (1) the County's policies were deficient in that they did not require or even mention de-escalation, (2) Deputy Boyle was not retrained after review of a prior shooting revealed his need for retraining to avoid confrontations inside vehicles, and (3) the County ratified Deputy Boyle's unconstitutional use of force against Mr. Donald by finding that it complied with County policy.  Dkt. No. 118 at 49–54.

For the reasons below, the Court grants Defendants' motion as to the de-escalation policy and failure-to-train theories, but denies it as to ratification.

1. <u>Plaintiffs Have Not Shown the County's Use of Force Policy Was Constitutionally Deficient.</u>

A municipality can be liable under *Monell* for failing to enact a policy that would safeguard its citizens' federally protected rights if that failure demonstrates "deliberate indifference" to the violation of those rights.  *Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1141–42 (9th Cir. 2020).   A plaintiff can demonstrate "deliberate indifference" by (1) identifying obvious deficiencies in the existing practices that would notify a reasonable policymaker that a policy is needed; or (2) showing that policymakers had actual or constructive notice of the need for a policy, ordinarily by pointing to "a pattern of prior, similar violations of federally protected rights, of which the relevant policymakers had actual or constructive notice."  *Id*.

Plaintiffs contend that the County's failure to enact a de-escalation policy should give rise to *Monell* liability, given the evidence that County officers had "wrongfully killed three citizens in a period of about 15 months."  Dkt. No. 118 at 51.  According to Plaintiffs' expert, "if de-escalation is not required by policy, it is less likely to be used."  *See* Dkt. No. 71 ¶ 10.

1

2

3

4

Defendants' reply brief emphasizes that Plaintiffs have not shown that the three killings referenced were wrongful or unconstitutional, and that "Plaintiffs provide no case law that indicate[s] how many prior shootings set a pattern that proves an unwritten policy to kill." Dkt. No. 121 at 11–12.

5

6

7

8

9

10

11

12

13

14

15

16

17

The Court agrees with Defendants that the evidence cited by Plaintiffs in support of this theory of *Monell* liability is insufficient to withstand Defendants' motion for summary judgment. Plaintiffs have provided no authority indicating that the County's failure to require de-escalation renders its policy facially deficient, nor have Plaintiffs provided evidence to suggest that the three incidents of allegedly wrongful killings involve similar conduct or similar constitutional violations, such that the County was on notice that a de-escalation policy was needed. Plaintiffs have failed to put forward any evidence on which a reasonable fact-finder could rely to find that the County's failure to enact a de-escalation policy demonstrates "deliberate indifference" to the rights of its citizens. *See, e.g.*, *Hepner v. Cnty of Tulare*, No. 1:18-cv-00774-NODJ-EPG-PC, 2024 WL 922891, at *6 (E.D. Cal. Mar. 1, 2024) (granting summary judgment on *Monell* claim because the lack of a de-escalation policy was not facially deficient and plaintiff put forward no evidence of a pattern of prior, similar constitutional violations). Defendants' motion is therefore granted as to this theory.

18

19

20

21

   2.   <u>Plaintiffs Have Not Demonstrated the County's Training of Deputy Boyle Was Constitutionally Deficient.</u>

Plaintiffs next contend that the County is liable for Deputy Boyle's conduct because it was on notice that he needed training to avoid confrontations inside a vehicle with a suspect, and yet the County provided no such training. Dkt. No. 118 at 51–52.

22

23

24

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official

government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'"  *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  "Proving that a municipality itself actually caused a constitutional violation by failing to train the offending employee presents difficult problems of proof, and we must adhere to a stringent standard of fault, lest municipal liability under § 1983 collapse into *respondeat superior*."  *Connick*, 563 U.S. at 70 (cleaned up).  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Id.* at 61.

In this case, Plaintiffs' failure-to-train theory of *Monell* liability relies on evidence that after Deputy Boyle shot at a suspect in a vehicle in 2018, the County's report evaluating that use of force noted that officers should be trained on actions taken in and around vehicles.  Dkt. No. 70-11 at 12.[12]  Deputy Boyle testified in his deposition, however, that he was not retrained after the 2018 incident, nor was he retrained after the shooting of Mr. Donald.  Dkt. No. 70-1 at 14, 33. Plaintiffs suggest that the 2018 report and the lack of subsequent training "highlights … the county's failure to adequately train deputies even when the county was on notice of an issue that needed to be addressed."  Dkt. No. 118 at 52.

---

[12] The County Sheriff's Office review report states:

> The review of this investigation found some training issues that can be addressed to help deputies handle similar type incidences in the future.  In particular, the actions deputies take in and around vehicles, whether they (the vehicle) are moving or not. … During the incident, Deputy Boyle stated he did get inside the vehicle with the suspect and a physical confrontation ensued.  At some point during the confrontation the suspect made the decision to drive away.  Deputy Boyle then either fell or was thrown from the vehicle[.] … This type of confrontation inside a vehicle should be addressed in future training to help reduce or eliminate this occurring and a deputy getting injured.

Dkt. No. 70-11 at 12.

While Defendants' briefing fails to address the 2018 incident directly, they contend in reply that Plaintiffs cannot show that the County's training was deliberately indifferent to constitutional rights because "Plaintiffs don't describe what training Clark County did provide, or what training it did not provide." Dkt. No. 121 at 11.

Although Defendants' meager briefing on this issue renders Plaintiffs' training theory a closer question, the Court nonetheless finds that Plaintiffs have not put forth sufficient evidence to survive Defendants' motion. While the evidence related to the 2018 incident is concerning, and regrettably unaddressed in Defendants' reply brief, it is not enough to demonstrate a municipal policy of deliberate indifference to the constitutional rights of County citizens.[13]

Plaintiffs have provided no evidence regarding the scope of training provided to Clark County officers concerning interactions with suspects in vehicles, nor identified any constitutional deficiencies in this regard. While the 2018 report provides, "it is and has been best practice training that deputies not get inside, neither wholly or partially in a vehicle with a suspect," (Dkt. No. 70-11 at 12), the record does not indicate whether Clark County provides this "best practice" training or whether the thrust of the 2018 report is that the County *should* provide such training in the future.

Whether the report reflects the present state of, or recommended changes to, the County's training program, Plaintiffs fail to demonstrate that the report supports a finding of the County's "deliberate indifference" to the constitutional rights of its citizens. The 2018 report did not recommend training Deputy Boyle to avoid constitutional violations in the future—rather, it recommended training for the sake of officer safety. Dkt. No. 70-11 at 12. "Without notice that a source of training is deficient in a particular respect, decisionmakers can hardly be said to have

---

[13] The Court offers no opinion at this stage on the sufficiency of this evidence as it relates to Plaintiffs' negligence claims.

deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62; *see also Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 682–83 (9th Cir. 2021) (explaining that a plaintiff asserting *Monell* liability based on a failure to enact a particular policy "must show that [the municipality] had actual or constructive knowledge that its practices were substantially certain to cause a constitutional violation").

For these reasons, the Court grants Defendants' motion with respect to the failure-to-train theory.

3. Plaintiffs' Claim that the County Ratified Unconstitutional Conduct Survives Summary Judgment.

If a municipal decisionmaker makes a "conscious, affirmative choice" to approve a subordinate's unconstitutional act and the basis for it, that ratification may give rise to municipal liability for the subordinate's unconstitutional act. *See Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992).

Plaintiffs contend that the County ratified Deputy Boyle's unconstitutional conduct by concluding that his actions complied with the County's use of force policy. Dkt. No. 118 at 53 (citing Dkt. No. 70-7 at 10–12, 16–25, 26–27). Specifically, Plaintiffs allege that Commander KC Kasberg, acting as the Sheriff's delegate, found "Deputy Boyle's use of deadly force was in compliance with [CCSO] policy 01.21.050 Use of Deadly Force." Dkt 70-7 at 27. In his deposition, Sheriff Atkins testified that he was aware that his Commander found Deputy Boyle's actions comported with the County's policy and that he accepted and ratified those findings. *Id.* at 11–12.

The County's review of the shooting concluded that Deputy Boyle's use of force was justified because it was reasonable for him to believe that Mr. Donald posed a threat of serious physical harm and that his vehicle could be used as a weapon against Deputy Boyle "when Donald

started the car and began to move." *See* Dkt. No. 70-7 at 26–27.  But, as detailed above, viewing the evidence in the light most favorable to Plaintiffs, the deputies' statements describing their interaction with Mr. Donald are internally inconsistent and do not comport with the available physical evidence.  These inconsistencies should have been evident when the County reviewed the shooting, but there is no evidence that the County scrutinized the deputies' statements before approving Deputy Boyle's use of force.

Without citation to the record, Defendants' reply brief argues only that "there is no evidence that anyone at the County ratified any unconstitutional acts."  Dkt. No. 121 at 12.  This conclusory, single-sentence argument fails to grapple with any of the evidence or authority cited by Plaintiffs.  To the extent that Defendants suggest that Deputy Boyle's conduct was not unconstitutional, the Court has explained that it cannot conclude as much as a matter of law, because if Plaintiffs' version of the facts is credited, a reasonable fact-finder could conclude that Deputy Boyle's actions violated Mr. Donald's constitutional rights.  Defendants have not otherwise explained why the County's approval of Deputy Boyle's conduct does not constitute ratification, and the Court declines to make arguments on their behalf.  Instead, the Court finds that evidence suggesting that the County approved of conduct without sufficient scrutiny could lead a reasonable fact-finder to conclude that the County ratified unconstitutional conduct.  *See, e.g.*, *Larez v. City of Los Angeles*, 946 F.2d 630, 647 (9th Cir. 1991) (finding ratification due to deficient internal police investigations, where the investigations contained holes and inconsistencies "that should have been visible to any reasonable police administrator"); *Selto*, 2023 WL 6311284, at *8 (denying summary judgment on ratification theory where Sheriff's representative signed a memo ratifying the shooting and no involved deputies were retrained or disciplined); *Rosales v. City of Chico*, No. 2:14-02152 WBS CMK, 2015 WL 6167740, at *5, 7–8 (E.D. Cal. Oct. 20, 2015) (after ruling that a jury "could easily find" that the officer's use of

1   force was unreasonable, the police chief's finding that the officer's use of force complied with city

2   policies "is more than sufficient to raise a genuine issue of material fact with respect to whether

3   the City of Chico had a policy of using the force [the officer] did in this case").

4       Because Defendants have failed to meet their burden to show that they are entitled to

5   judgment as a matter of law for this theory of *Monell* liability, the Court denies their motion in this

6   respect.  *See Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003) (holding that even where

7   a summary judgment motion is unopposed, the moving party is not entitled to summary judgment

8   unless its motion shows that it is entitled to judgment as a matter of law).

9   **E.    The Felony Defense Statute Does Not Apply to Plaintiffs' State Law Claims.**

10      Along with their federal claims, Plaintiffs allege claims for negligence and assault and

11  battery under state law.  Dkt. No. 1 at 11–13.  Defendants do not argue that these claims fail based

12  on lack of supporting evidence, but instead argue "[t]he Court should dismiss the state law claims

13  … as barred by the felony defense" statute.  Dkt. No. 113 at 12.  The Court disagrees.

14      Under the version of Section 4.24.420(2) [14] of the Revised Code of Washington in effect

15  at the time of the shooting,

16      > It is a complete defense to any action for damages for personal injury or wrongful
17      > death that the person injured or killed was engaged in the commission of a felony
        > at the time of the occurrence causing the injury or death, and the felony was a
18      > proximate cause of the injury or death.  However, nothing in this section shall affect
        > a right of action under 42 U.S.C. Sec. 1983.

19      Defendants allege that Mr. Donald committed felony assault by kicking Deputy Boyle and

20  that Mr. Donald was engaged in the felony of attempting to murder Deputy Boyle at the time of

21

22  ───────────────
    [14] This statute was amended on May 18, 2021, to require a determination by a fact-finder that the felony was committed
    beyond a reasonable doubt.  2021 Wash. Sess. Laws 2749.  Defendants argue that the Court should apply the version
23  that was in effect at the time of the shooting, while Plaintiffs suggest the amended statute should apply retroactively.
    Dkt. No. 113 at 12 n.5, Dkt. No. 118 at 48.  In any event, the Court need not decide which version of the statute
24  applies, because application of either version would require the Court to resolve disputed facts about Mr. Donald's
    intent, which it cannot do at summary judgment.

the shooting.  Dkt. No. 121 at 12.  This Court previously held that Deputy DeZubiria was not "entitled to a felony defense to Plaintiffs' assault and battery claim" because "there is a genuine dispute of fact over whether Mr. Donald actually kicked Deputy Boyle," thereby committing felony assault.  Dkt. No. 104 at 13.  The Court's prior order (*id.* at 4) cited Deputy Boyle's deposition testimony stating that Mr. Donald kicked him (Dkt. No. 70-1 at 40), as well as Deputy Agar's statements that he did not see Mr. Donald's foot make contact with Deputy Boyle's body (Dkt. No. 70-4 at 21).  During the deposition cited in the Court's prior order, Deputy Agar also stated it was possible any contact between Mr. Donald's foot and Deputy Boyle's body was accidental.  Dkt. No. 70-4 at 24.

Defendants seek to revive this argument by submitting another declaration from Deputy Agar contradicting his earlier deposition testimony about the alleged kick, stating, "I was asked whether it was possible that [the kick] was an accident.  Anything is possible, so I answered 'yes.' It was my opinion then and now that it was not an accident."  Dkt. No. 114 ¶ 4.  However, these two conflicting statements do not resolve the genuine issue of material fact previously identified by this Court as to whether Mr. Donald's foot made contact with Deputy Boyle (Dkt. No. 104 at 13).  Nor does Deputy Agar's supplemental declaration resolve any of the factual questions discussed above regarding whether Mr. Donald had the intent to (or took the actions required to find he attempted to) murder Deputy Boyle.  These questions include whether Mr. Donald grabbed Deputy Boyle's vest (*see* Dkt. No. 96-6 at 6), and whether Mr. Donald was dragging Deputy Boyle alongside the car when the shots were fired or was otherwise attempting to use his vehicle as a weapon (*see* Dkt. No. 125 at 12–13, Dkt. No. 70-9 at 11).  As this Court and others applying the felony defense statute have held, such questions are for the jury.  *See Watness v. City of Seattle*, 481 P.3d 570, 580–81 (Wash. Ct. App. 2021) (finding that the trial court erred in applying the felony defense statute to grant officers' motion for summary judgment because a genuine issue of

material fact existed as to whether the deceased had the specific intent to assault officers); *Joseph v. City of Kent*, No. 2:20-771-BJR, 2021 WL 391763, at *6–7 (W.D. Wash. Feb. 4, 2021) (statute did not bar recovery where a genuine issue of fact existed as to whether the deceased intended to assault or elude officers), *order amended on reconsideration on other grounds*, 2021 WL 926353 (W.D. Wash. Mar. 9, 2021).

Construing the facts in Plaintiffs' favor, the Court cannot find Defendants are entitled to summary judgment on the state-law claims based on the felony defense statute, and therefore denies Defendants' motion as to these claims.

### III.   CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Dkt. No. 113) is GRANTED IN PART and DENIED IN PART.  The motion is granted as to the constitutional claim against the County on the theories related to failure to enact a de-escalation policy and failure to train, but denied in all other respects.

Because the trial date has been stricken and the associated case deadlines were vacated (Dkt. No. 132), the clerk is directed to terminate the parties' motions in limine and the related motion to strike.  Dkt. Nos. 127, 129, 130.

The parties are directed to file a joint status report no later than June 7, 2024 proposing a case schedule, including trial availability.  The Court will then enter a new case schedule.

Dated this 10th day of May, 2024.

Kymberly K. Evanson
United States District Judge